THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ONOFRE PIERANTONI, Defendant and Appellant.

Nos. 12791–92–93. Argued November 10, 1947.—Decided November 26, 1947.

*Ramón R. Cabrera* for appellant. *Luis Negrón Fernández, Attorney General, J. Rivera Barreras, Prosecuting Attorney,* and *Alberto Picó Santiago, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Onofre Pierantoni was charged in the District Court of Ponce with the crime of voluntary manslaughter in that on or about October 16, 1941,[1] in the ward of Jagua Pasto, Guayanilla, upon a sudden quarrel and heat of passion, he assaulted and battered Elena Caraballo Cedeño with a shotgun, shooting at her once, in consequence of which she died shortly thereafter. He was also charged with the offenses of carrying a weapon and of violating the Registration of Firearms Act.[2] The cases were jointly tried: the manslaughter case before a jury and the misdemeanor cases before the court without a jury, upon the evidence introduced in the felony case. The jury brought in a verdict of guilty in the case of manslaughter and the court sentenced the defendant to 5½ years, imprisonment in the penitentiary. In each of the misdemeanor cases the court sentenced him to one month in jail.

From those judgments the defendant has appealed, filing a single brief in support of his three appeals. In his brief he urges (1) that the lower court erred in admitting, over his objection, the pistol seized by Chief Molina in the house of the defendant, on the day following the occurrence, without said pistol having been duly identified or having been seized under a proper search warrant; (2) in admitting the two shotgun cartridges seized without a search warrant, in the residence of the defendant herein, on the day after the occurrence, thereby influencing the members of the jury; and (3) that the defendant was not found guilty and con-

---

[1] Although the crime was committed on October 16, 1941, we do not know the reason why the trial was not held until March 6, 1946.

[2] The charge of carrying a weapon consisted in having illegally carried the shotgun with which the manslaughter was committed, and the charge of violating the Registration of Firearms Act in that he kept in his dwelling a pistol without having registered it.

victed of carrying a weapon or of violating the Registration of Firearms Act, he having been sentenced without argument on certain questions of law which were pending.

█ We will consider together the first two errors assigned. From the record it appears that the witnesses Ángel Sáez Sáez and Pedro Ortiz Sánchez testified that the pistol introduced in evidence looked like the one they saw in the hands of Onofre Pierantoni on October 16, 1941, shortly before he committed the felony with which he was charged and that they believed that it was the same weapon. Rafael Molina, Chief of the Insular Police, who arrested the defendant, emphatically stated that the pistol shown to him was the same one he had seized in the house of the defendant. He made a like statement with respect to the two shotgun cartridges. Therefore, there was a sufficient identification of those objects. *People* v. *Vega,* 56 P.R.R. 416.

█ If the defendant believed that both the pistol and the cartridges were illegally seized, the proper thing to have done was to file a motion for suppression of such evidence. Generally, motions of this kind should be filed before the trial. *People* v. *Capriles,* 58 P.R.R. 551; and *People* v. *Acevedo,* 59 P.R.R. 133. There are cases, however, in which that question may be raised during the trial. *People* v. *Capriles, supra,* p. 556, and *People* v. *Nieves,* 67 P.R.R. 283. However, in the present cases the defendant did not faise at any time in the lower court the question of the illegal manner in which the evidence introduced against him was obtained. He merely contended that there had not been a sufficient identification of the pistol and that the cartridges were not connected in any way with the other evidence introduced in the case.

█ From the record it likewise appears that the pistol and the cartridges were seized in the house of the defendant by the Chief of Police Rafael Molina. As Pierantoni was charged with a felony, the police did not need any search warrant to arrest him, since, according to § 116 of the Code

758

of Criminal Procedure "A peace officer may . . . without a warrant, arrest a person: . . . 3. When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it." Moreover, as the crime with which Pierantoni was charged was a felony, the peace officer, if necessary, could enter into the house and even break open the door of Pierantoni's house in order to arrest him. Section 124, Code of Criminal Procedure.

■ Regarding the illegality of the evidence procured, we will finally say that the defendant has raised the question for the first time on appeal, and that this, of course, can not be done. *People* v. *Figueroa,* 59 P.R.R. 909, and cases cited at p. 910.

In view of the foregoing considerations, we think that both the pistol and the two cartridges were duly identified; that even conceding for the purpose of this opinion that said objects were illegally seized, such illegality was not timely raised; and that the question relating to the illegality of the seizure of the articles introduced in evidence, can not be raised for the first time on appeal. Therefore, the first two errors assigned are nonexistent.

■■ We now turn to the third error. Ever since the arraignment in the case of manslaughter took place, the defense expressed its wish that the three cases be jointly tried, and announced that in connection with the misdemeanors it had certain questions of law to raise. During the trial it made similar statements. Subsequently, and after the verdict of guilty was entered by the jury, it reiterated its intention of raising said questions of law. However, at no time was the court apprised of the nature of such questions or given any opportunity to decide them, notwithstanding the fact of its having set various dates for pronouncing sentence. On March 20, 1946, the date finally set by the court for that purpose, only the defendant appeared without his counsel. The court, safeguarding the interests of the defendant, then proceeded to appoint an attorney to represent

him in the act of pronouncing sentence. The attorney accepted the appointment and then the judge, addressing the defendant, said: "You had a murder case and were found guilty of voluntary manslaughter.[3] You were found guilty by the jury. You were also found guilty of failing to register a firearm and of carrying a weapon. Is there any reason why sentence should not be pronounced?" Upon receiving a negative answer, the judge further said: "The court is going to impose upon you, in the case of voluntary manslaughter, five years' imprisonment in the penitentiary,[4] in the case of carrying a weapon one month in jail, and in that of failure to register a firearm, one month in jail." The defendant did not at any subsequent time apply to the lower court for any relief in connection with the misdemeanor cases. He could have done so but never did, and now raises the question for the first time before this Court. We do not think that said error exists, either. As we stated in *People v. Rosario*, 39 P.R.R. 75, in cases of misdemeanors, the procedure followed by the trial judge involves a well-understood and short way for the court to find the defendant guilty and sentence him.

■ In addition to the errors specifically assigned, the appellant contends that from all the evidence introduced it appears that the facts occurred within the farm of the defendant and his wife, he therefore being free to use a shotgun therein.

According to Act No. 14 of June 25, 1924 (Spec. Sess. Laws, p. 114), its provisions shall not be applicable: "5.— To the carrying of firearms within one's dwelling or estate."

---

[3] Perhaps the judge was mistaken in stating that the defendant had a murder case and was found guilty of voluntary manslaughter. (The record shows that the information on which Pierantoni was tried, charged him with the crime of voluntary manslaughter.) We have said "perhaps" because it is possible that the information originally filed against the defendant might have charged him with murder.

[4] The document entitled "Pronouncement of Sentence" which appears on p. 4 of the judgment roll, shows that the penalty imposed in the manslaughter case was 5½ years' imprisonment in the penitentiary.

The evidence introduced in this case was conflicting. While that for the prosecution tended to show that the defendant carried said shotgun "in a public road" and that the crime was committed in the farm of Juana Ramos, that of the defense tended to show that there was no such carrying in the vicinal road and that the property where the facts occurred belonged to the Heirs of Marini, the wife of the defendant being one of such heirs. By rendering judgment in the manner it did the district court undoubtedly resolved the conflict in the evidence. We do not think that we should disturb its findings on this particular. *People* v. *Santos, ante,* pp. 610, 613.

The judgments appealed from should be affirmed.